## LESTER LAMPSON v. NORMAN CUMMINGS.

*Sale—Mistake of fact—Rescission.*

1. A bill of sale of a livery stock included "two two-seated full-top carriages," but it afterward appeared that one of the carriages which the vendor supposed was a full-top was not so. *Held* that this mistake of fact could not, in law, relieve him of the obligation to deliver a full-top in its place or account for the value of such a carriage.

2. The rule that one cannot rescind a contract in part and affirm it in part does not apply where a purchaser of stock, the items of which are particularly described in the bill of sale, refuses to accept an article which varies from the description, and sues the vendor for failure to fulfill the contract of sale.

Case made from Kent. (Montgomery,J.) Jan.18.—Jan.29.

ASSUMPSIT. Plaintiff had judgment. Affirmed.

*Taggart & Wolcott* for plaintiff. One who sells goods of a specified description undertakes to deliver goods that shall correspond to those described : *Henshaw v. Robins* 9 Met. 89 ; *Winsor v. Lombard* 18 Pick. 60 ; *Tye v. Finmore* 3 Camp. 462 ; *Shepherd v. Kain* 5 B. & Ald. 240 ; 1 Pars. Cont. 582 ; *Batturs v. Sellers* 5 H. & J. 117 ; *Yates v. Pym* 6 Taunt. 446 ; 2 Sutherland on Damages 410 ; *Wright v. Barnes* 14 Conn. 518 ; *Edgar v. Canadian Oil Co.* 23 U. C. (Q. B.) 333 ; and on default is liable to an action for breach of contract: *Kimball & Austin Mfg. Co. v. Vroman* 35 Mich. 328 ; *Heilbutt v. Hickson* L. R. 7 C. P. 438 ; *Clark v. Moore* 3 Mich. 55 ; *Wilson v. Wagar* 26 Mich. 452 ; good faith or want of knowledge is no protection : *Byles v. Lawrence* 35 Mich. 458 ; see *Martus v. Houck* 39 Mich. 436.

*Maher v. Felker* for defendant. A bill of sale absolute in its terms can be shown by parol in an action at law to be a collateral security only, and parol proof of the purpose and character of a transfer of personalty is competent, notwithstanding the giving of a bill of sale, as a symbolical delivery or to show a transfer of title ; *Fuller v. Parrish* 3 Mich. 213 ; *Picard v. McCormick* 11 Mich. 68 ; *Rowe v. Wright* 12 Mich. 289 : *Sirrine v. Briggs* 31 Mich. 443 ; *Trevidick v. Mumford* 31 Mich. 467 ; if the bill of sale embodies the terms of the contract made by the parties, and is as capable of explanation or contradiction by parol and the goods do not answer the description, the purchaser can elect to sue for breach of warranty or rescind the entire contract by offering to return the property purchased and demanding re-payment of the consideration paid : *Clark v. Baker* 5 Met. 461 ; *Lawton v. Keil* 61 Barb. 558 ; he can not, however, rescind as to a portion of the property and retain the rest ; he must rescind entirely or not at all : *Hubbardston Lumber Co. v. Bates* 31 Mich. 159, 169 ; *Peninsular Bank v. Hanmer* 14 Mich. 208 ; *Widner v. Lane* 14 Mich. 125 ; *Dunks v. Fuller* 32 Mich. 242, 245 ; *Morse v. Brackett* 98 Mass. 205.

COOLEY C. J.   The plaintiff in this case declared in assumpsit "for that the said defendant agreed to sell, and did contract in writing to sell, to said plaintiff two two-seated full-top buggies; that said defendant failed to comply with his said contract of sale and to deliver one of the two-seated full-top buggies, which was of great value, to-wit, of the value of three hundred dollars; that, although often requested, and said buggy has been fully paid for by said plaintiff, yet said defendant has failed to deliver said buggy, to plaintiff's damage of three hundred dollars."

"Also for that said defendant agreed to and did sell and contract to deliver other two-seated full-top buggy; yet the said defendant did not in fact sell and deliver such buggy as he had contracted to deliver as aforesaid, but only one buggy that answered such description, to plaintiff's damage three hundred dollars."

The case was tried by the circuit judge without a jury, and findings were made of fact and law which are given in the margin.[1]   The defendant requested further findings on

---

[1] This cause having been tried before the court without a jury, and a written finding of facts having been requested, I therefore find the facts therein as follows:

1. That on or about January 6, 1883, the plaintiff purchased a livery stock consisting of horses, carriages, etc. of defendant in which was described two two-seated full-topped carriages, and received from defendant a bill of sale thereof, a copy of which is attached to these findings marked Exhibit A, and which is made a part hereof.

2. That said stock sold and transferred by said bill of sale was in part, at the time of said sale, located upon Kent street in the city of Grand Rapids, and a part, being the remainder, was located on the fair grounds just south of the city.   Plaintiff received that part of said stock at the barn on Kent street in said city, at the time of the execution of said bill of sale, and was to take possession of that part located at the fair grounds where it was located on the fair grounds.

3. When the agreement was being talked up Dexter Barker, the agent for defendant in charge of the stock in question, stated to the plaintiff that the two-seated full-top carriage at the fair ground was a better carriage than the two-seated full-top carriage at the barn on Kent street.

4. That said plaintiff made no examination of the carriages at the fair grounds at any time, but in fact relied upon the representations made in the city, where the trade was consummated, and upon the bill of sale given, the entire consideration of which, including incumbrances assumed, was the sum of twenty-five hundred dollars.

5. That when negotiations were first opened, some days before they were closed, Irwin Lampson, a son of the plaintiff, sent another son to the fair grounds who reported to Irwin but not to his father, the plaintiff, what carriages he saw there, but this knowledge was not brought to plaintiff in any manner, and he relied upon the representations made and agreement given, reduced to writing as aforesaid.

6. There was not at the fair grounds any two-seated full-topped car-

some points, which were refused, and he also excepted to some of the findings as having no evidence to support them; but in neither particular do we think the record discloses any error. He also excepted to the conclusions of law, and such of the exceptions as appear to us to require attention are here noticed.

It is contended for the defendant that it is obvious from

riage, and defendant has never delivered to the plaintiff but one two-seated full-topped carriage. There was at the fair ground a half-topped carriage, the top covering one seat, and the carriage of less value than the one called for by the said bill of sale. Plaintiff never accepted the carriage in lieu of the one called for by the contract, and never in any manner took possession of it or had to do with it, and it still remains at the fair grounds where placed by defendant's agents.

7. That immediately upon said plaintiff ascertaining that there was no two-seated full-topped carriage at the fair grounds (and shortly after the trade was closed), and only the half-topped carriage was there, he notified defendant of the fact, and that he would not receive such half-topped carriage in lieu of the two-seated full-topped carriage called for by the bill of sale, and that the only reply or claim of defendant was that the half-topped was a full-topped carriage. Plaintiff did in fact, at the time of the sale or shortly thereafter, take possession of the entire stock covered by said bill of sale, except the two-seated full-topped carriage, which the defendant failed to produce and deliver to him at all times.

8. That the full-top two-seated carriage called for by the bill of sale was worth the sum of one hundred and fifty dollars, and plaintiff, by reason of defendant's failure to deliver the same, was damaged in that sum.

9. That at the time of the execution of said bill of sale, there was drafted by the agent of the defendant, a chattel mortgage upon the property described in the bill of sale from plaintiff to defendant, and the same was then and there executed by said plaintiff and delivered to said defendant, a copy of which said chattel mortgage is hereto attached and made a part of these findings of fact, and is marked Exhibit B.

10. That the suit was commenced on the 23d day of March, 1883, and on the 6th day of April, 1883, said plaintiff procured a loan of some money from John J. Belknap, Esq., city clerk of Grand Rapids, and gave him a chattel mortgage to secure the same upon his stock of livery; that said Belknap drafted this, his own chattel mortgage, from the one on file in his office, given to defendant as aforesaid, and in describing said stock in detail, described two two-seated full-top carriages, and so drafted, the same was signed and delivered by plaintiff to said Belknap. That by the execution of this Belknap mortgage and the mortgage to defendant, plaintiff did not intend to claim or exercise ownership over the two-seated half-top carriage, and did not in fact, as neither of the same described it. A true, correct copy of said chattel mortgage to said Belknap is hereto attached, made a part of these findings of fact and marked Exhibit C. That plaintiff paid no farther attention to the description of property in this chattel mortgage, and did not notice the description of two two-seated full-topped carriages, but that they were included in said description.

As conclusions of law from the foregoing facts I find:

1. That defendant having executed and delivered to said plaintiff his

the findings he did not intend to obligate himself to the delivery of anything that he did not have; that if the carriage on the fair grounds did not answer the description in the bill of sale, the parties were under mutual mistake as to the fact, and therefore the contract as to the carriage in respect to which suit is now brought was ineffectual. One answer to this is that the parties seem to have understood per-

---

bill of sale under the circumstances set forth in the findings of facts, was legally obligated to comply with its conditions and to deliver, or cause to be delivered, to said plaintiff two two-seated full-topped carriages.

2. That plaintiff, by the execution of the chattel mortgage to defendant, before having knowledge of the breach of the conditions of bill of sale, and by the execution of the chattel mortgage to Belknap, did not waive the breach and accept the half-top carriage in lieu of the one called for by the bill of sale, and its terms relating to the controversy in this cause.

3. Defendant having failed to deliver the two-seated full-topped carriage called for by the bill of sale, and by none of his actions or conduct has plaintiff waived his right to insist upon the bill of sale, executed and delivered by him to the plaintiff, and having delivered only one such carriage, is liable to respond in damages for the carriage not delivered to said plaintiff, and for its value.

4. That plaintiff is entitled to recover the value of the carriage not delivered, from said defendant, and to a judgment against said defendant for $150 and interest from March 6, 1883, being the sum of $154.60, and his costs of this suit to be taxed, and judgment is directed accordingly.

ROBERT M. MONTGOMERY, Circuit Judge.

[The exhibits are omitted. They describe the carriages as "two two-seated full-top carriages."]

Amendments to the findings were afterwards made on application of the defendant as follows:

1. The defendant became the owner of the livery stock referred to in said findings on the second day of January, 1883. The representations made by Dexter Barker, as stated in the 3d paragraph of the findings of fact herein, were made previous to that time, and were made to Irwin Lampson, plaintiff's agent, instead of to the plaintiff. Said Barker was continued in the possession of the property by the defendant, and subsequent negotiations were had with him by the plaintiff, Barker acting as defendant's agent, which negotiations resulted in the giving of the bill of sale in question, January 6, 1883.

2. The defendant had never seen the carriage at the fair ground, and did not know its particular description.

3. Irwin Lampson was acting as the agent for the plaintiff in respect to the negotiations for the purchase of said livery stock at the time he sent another son of the plaintiff to the fair grounds as stated in said findings, and such other son was sent by said Irwin to examine that portion of said livery stock that was at the fair grounds.

4. The carriage at the fair grounds referred to in said findings, had a full-top over one of the seats, and a two-seated carriage having a top extending over both seats is known in the trade as an extension top, and are also classed as full-topped carriages.

fectly that the one was selling and the other was buying a carriage of a definite description, and the plaintiff in paying for the stock has paid for such a carriage. The only mistake made was in assuming that a certain carriage then on hand answered the description. It turned out that it did not. If this mistake would entitle the party to any relief in equity it certainly will not at law. The defendant has promised to deliver the carriage, and he must do so or account for its value.

---

5. A two-seated carriage having a full top over one seat is not known in the trade as a full-topped carriage, in contradistinction to an extension top.

6. In the negotiations of said livery stock by the plaintiff, there were lists made of the different articles included in said stock, with estimates of the value of each, and the sale was finally made for a gross amount, which was several hundred dollars less than the amount of the valuation made by such lists.

7. At the time of the making of the mortgage by the plaintiff to John J. Belknap, the plaintiff directed said Belknap to make said mortgage to cover the said property as that covered by the mortgage given by the plaintiff to the defendant, as stated in said findings. Said mortgage to Belknap was unpaid at the time of the trial herein, and was of record in the office of the clerk of the city of Grand Rapids.

8. I am asked to find as to whether in the dealings between the parties, which resulted in the giving of the bill of sale by the defendant to the plaintiff, it was not the intention of the defendant to sell and of the plaintiff to purchase all of a certain livery stock then owned by the defendant, and which included the carriage at the fair grounds, and which did not include more than one two-seated carriage having a top covering both seats. I find in answer to this, that the negotiations between the parties related to the entire livery stock owned by the defendant, but that the plaintiff did not intend to purchase but a single carriage having a top covering both seats, but on the contrary relied upon the representations of Dexter Barker made to Irwin Lampson, as hereinbefore stated, and the statements contained in the bill of sale given him, that there was two two-seated, full-topped carriages in the stock purchased by him. The stock which the defendant owned in fact, included but one two-seated carriage having a top covering both seats.

9. Notice to Irwin Lampson of the character of the carriage at the fair grounds was not notice to the plaintiff. The sending by Irwin Lampson of his brother to examine said stock at the fair grounds, and the subsequent report of this brother to said Irwin, was not in legal effect notice to the plaintiff of the character of the carriage at the fair grounds, which precludes him from maintaining this action.

10. The plaintiff by first declaring in justice court for breach of warranty in the bill of sale to him, did not make an election which precluded him from maintaining an action upon the causes stated in his amended declaration herein. Said amended declaration was filed without objection at the time of the trial herein, the defendant's attorney having previously consented that the plaintiff might file an amended declaration.

11. The plaintiff can maintain this action for a failure to deliver one of a number of articles purchased for a gross amount for the whole, without having first offered to rescind the entire contract.

It is further suggested on the part of the defendant that the proper view to take of the contract of sale is that it is a contract for the sale of the livery stock which the defendant then had, including the carriage on the fair grounds; and if the defendant refuses to accept any part of the property as not being within the description in the bill of sale, he must rescind the contract entirely; he cannot rescind in part and affirm in part. This is an ingenious suggestion, but not a sound one. The plaintiff purchased property which was particularly described, and he is entitled to have what he bought. He does not propose to rescind the contract or any part of it; he demands the fulfilment of the whole of it, and brings this suit for the failure on the part of defendant to perform in one particular. His right seems to us, as it did to the circuit judge, to be clear.

There is a further suggestion that, under the evidence, the carriage that was upon the fair-grounds may be held to be a full-top carriage; but this is not admissible under the findings.

The judgment must be affirmed.

The other Justices concurred.